# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 8, 2013 On Remand

## STATE OF TENNESSEE v. KEVIN ANTHONY GRAHAM

**Appeal from the Criminal Court for Hawkins County**
**No. 10-CR-189     John F. Dugger, Jr., Judge**

---

**No. E2013-00204-CCA-RM-CD - Filed November 27, 2013**

---

The Defendant-Appellant, Kevin Anthony Graham, entered a guilty plea in the Hawkins County Criminal Court to the charged offense of theft of property valued at $10,000 or more but less than $60,000, a Class C felony, and requested that the trial court grant him judicial diversion or an alternative sentence.  The trial court subsequently sentenced Graham to three years' incarceration.  On appeal, Graham argued that the trial court erred in denying (1) judicial diversion and (2) an alternative sentence.  After reviewing the record on appeal, we reversed the trial court's denial of alternative sentencing and remanded the case to the trial court with instructions to enter an order sentencing Graham to serve ninety days' confinement in the Hawkins County Jail with the remainder of his three-year sentence to be served on supervised probation.  See State v. Kevin Anthony Graham, No. E2011-01382-CCA-R3-CD, 2012 WL 3594361, at *12 (Tenn. Crim. App. Aug. 22, 2012).  The State filed a Rule 11 application, pursuant to the Tennessee Rules of Appellate Procedure, requesting permission to appeal the case to the Tennessee Supreme Court.  On January 8, 2013, the Tennessee Supreme Court granted the application and remanded the case to this court for reconsideration in light of State v. Bise, 380 S.W.3d 682 (Tenn. 2012), and State v. Caudle, 388 S.W.3d 273 (Tenn. 2012). Upon reconsideration, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Richard A. Spivey, Kingsport, Tennessee, for the Defendant-Appellant, Kevin Anthony Graham.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Alex Pearson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## PROCEDURAL BACKGROUND

Prior to entry of his guilty plea, Graham requested pretrial diversion, which was denied. On June 13, 2011, he entered a guilty plea to theft of property valued at $10,000 or more but less than $60,000, and requested that the trial court grant him judicial diversion or an alternative sentence. The parties agreed Graham would be sentenced as a Range I, standard offender to three years with the manner of service of the sentence to be determined by the trial court in the event that the court denied judicial diversion. At the sentencing hearing, the State conceded that restitution in the amount of $14,868.91 had been paid by Graham's family. In addition, the State noted that Graham's mother, the retired Clerk and Master for the Hawkins County Chancery Court, paid $10,062 for the cost of the audit related to the theft. At the conclusion of the sentencing hearing, the trial court denied judicial diversion and all forms of alternative sentencing and imposed a three-year sentence of incarceration. Graham filed a timely notice of appeal.

On direct appeal, Graham argued that the trial court erred in denying judicial diversion and an alternative sentence. Kevin Anthony Graham, 2012 WL 3594361, at *1. On August 22, 2012, this court reversed the trial court's denial of alternative sentencing and remanded the case to the trial court with instructions to enter an order sentencing Graham to serve ninety days' confinement in the Hawkins County Jail with the remainder of his three-year sentence served on supervised probation. Id. at *12.

On September 26, 2012, the Tennessee Supreme Court issued State v. Bise, 380 S.W.3d at 707, which abrogated the de novo standard of review with a presumption of correctness and held that the appropriate standard of appellate review for sentencing issues is "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act."

On October 9, 2012, the State filed in Graham's case a Rule 11 application for permission to appeal to the Tennessee Supreme Court, raising the following issue: "Whether this Court should remand this case to the Court of Criminal Appeals in light of this Court's recent decision in State v. Susan Renee Bise because the intermediate appellate court conducted a de novo review of the trial court's sentence with no presumption of correctness

merely because the trial court did not explicitly state that it had considered all of the purposes and considerations of sentencing[.][State's Rule 11 application, 2]"

On November 27, 2012, the Tennessee Supreme Court issued Caudle, 388 S.W.3d at 278-79, which held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based on purposes and principles of sentencing, including the questions related to probation or any other alternative sentence."

On January 8, 2013, the Tennessee Supreme Court granted the State's Rule 11 application and remanded the case to this court for reconsideration in light of Bise and Caudle. Following the remand, both parties filed supplemental briefs.

## FACTUAL BACKGROUND

Because we included a full statement of the facts in our previous opinion, we will only include a brief recitation of the facts here. At the sentencing hearing the State submitted a report, with no objection from the defense, summarizing the facts supporting Graham's guilty plea. This report provided the following, in pertinent part:

The [C]lerk and [M]aster notified us on September 23, 2009, that she had discovered discrepancies involving a delinquent property tax transaction. After we reviewed the transaction in question and performed extended audit procedures for the period July 1, 2008[,] though September 24, 2009, we determined that a cash shortage of $14,868.91 existed in the Office of Clerk and Master as of September 24, 2009. This shortage resulted from the apparent misappropriation of cash collections and improper entries made to official records to conceal the theft.

Employees of the office properly issued computer generated receipts for delinquent property tax collections. However, the chief deputy, Mr. Kevin Graham, subsequently posted entries to the computer system improperly voiding 19 receipts that had been paid in cash, concealing the theft of the cash. Mr. Graham later made entries to the tax rolls to reflect that most of these properties had paid their taxes. He also forwarded reports to the Office of Trustee reflecting that the taxes had been paid on these properties to prevent future delinquency notices from being sent to taxpayers by the trustee.

Graham testified he had worked for the Hawkins County Chancery Court for twenty-four years while his mother was the Clerk and Master for that court. He admitted he had

taken $14,868.91 in tax receipts and converted them to his own use. He also admitted he had made false entries in the computer system in order to conceal his theft. Graham said he stole the money from the tax receipts because "it was hard" covering the expenses for his wife and four children and because he was "too ashamed to go to [his] parents" for financial help. He stated that he intended to repay the money but that the audit uncovered his theft before he could replace the funds. Graham said he had never stolen anything prior to this offense and that he was "[d]eeply remorseful" for his actions. He requested that the trial court grant him judicial diversion so that he could "get back [to] working and supporting [his] family." Graham's criminal history, which included two speeding tickets in 2005 and 2008 and one seatbelt violation in 2009, was entered as an exhibit.

Graham said he discussed his crime with his minister and his friends and had never denied that he committed the offense in this case. The defense submitted six letters from individuals who supported Graham's request for judicial diversion or an alternative sentence. In addition, Jefferson Fairchild, an attorney in Hawkins County; Brice Lackey, the Rogersville Parks and Recreation Director; Catherine Combs, an instructor at the Tennessee Technology Center; and Thomas Willis, the senior pastor at First Baptist Church in Rogersville, testified that they knew Graham well and that Graham was genuinely remorseful for his actions. Michelle Graham, the Defendant-Appellant's wife, stated that Graham was an excellent father and husband and that their marriage was stable. She said Graham was extremely remorseful for his actions and had tried to support his family during this difficult time.

After hearing the evidence at Graham's sentencing hearing, the trial court said it did not take its decision "lightly" and described the case as "a serious matter." The court first determined that Graham was amenable to correction because he had a "good" attitude, a supportive family, and expressed remorse for his actions. It noted that Graham had no criminal history and found that Graham had a positive social history and good mental and physical health. The court stated:

> [Graham's s]ocial history is good and that's something that's going to aid him in his future. This is not the end of the world for Mr. Graham. Mr. Graham will do fine in the future[,] but he's got to be punished. If he's not punished, the people in Hawkins County, there will be a lot of them [who] will say, [O]h, yeah, he's good, that's what he deserved. But there's a big majority of the people that come through this Court[,] and I'm handling over two thousand cases a year and a lot of thefts, how can I put anybody in jail for a theft of a thousand dollars or five hundred dollars or whatever and then they think, Well, you know, I got what I deserved and then Mr. Graham[, who is] connected to the courthouse and the courts, [who stole] fourteen thousand dollars[] doesn't

-4-

go to jail. I couldn't do it. There would be no respect for the judicial system. And this is a tough decision for the Court.

The trial court said that the circumstances of this offense "concern[ed it] greatly." It noted that the theft occurred over a period of nearly a year, from July 1, 2008, to June 30, 2009, which had given Graham time to reflect on his actions. It further asserted that Graham was "under an oath, under a duty, to be honest" and to conduct himself with "u[t]most honesty in the county." The court stated that Graham could have taken on a second job at night or on the weekends instead of stealing this money. It also noted that Graham's family had repaid the money Graham stole and that Graham's mother, the former Clerk and Master, had repaid the cost associated with the audit. The court expressed its concern about Graham's offense, stating: "[T]he people of Hawkins County have to have the belief that the courthouse and the justice system are places where people that work in those facilities are honest and that they can trust what goes on in these buildings."

The trial court also said that Graham had worked for his mother in the clerk's office for the last twenty-four years and that everyone "thought [he] did a great job." However, it asserted that Graham's theft gave all of his mother's "good years of service a black eye amongst the public." The court also asserted that Graham "had a duty to be the most honest person in the courthouse, and he breached that duty. He breached the public trust." The court added, "[T]he poor man, the working man out here that's not connected to the courthouse that get[s] charged with a theft, if [he] go[es] to jail, [he will] say: I'm not connected, I don't have connections in the courthouse, . . . I go to the jail [but] if you've got connections, you don't."

The trial court then considered the deterrence value to Graham as well as to other individuals. The court said "clerks that handle thousands and thousands of dollars" need to be deterred from taking funds from "poor people" who have "scraped up their [money] to pay their court costs[.]" The court opined that anyone working in the courthouse or justice center needed to be aware that "if they steal, they've got to know they're going to be held to a higher standard because of the public trust that's put in [them]."

The trial court also considered whether judicial diversion or an alternative sentence would serve the interests of the public and the defendant. It determined that such a sentence would not serve the public's interests because the public put their trust in individuals working in the courts. Regarding whether these types of sentences would serve Graham's interest, the court stated:

> [Judicial diversion or an alternative sentence] might serve the accused in some
> ways and then in other ways it [would not], because if [Graham] steals

fourteen thousand dollars working in the courthouse and doesn't [have to serve] a day in jail and is out here living in Hawkins County [for] the rest of his life, people are going to say, Well, he got out of that, instead of going [to prison] and putting in his time and getting out and holding his head up and saying, I [paid] my debt to society, I did my time . . . . [Instead, people will say that his mother] paid the restitution, [his mother] paid the audit fee, [his mother] got [him] out of it, [he] didn't have to serve a day.

The court also determined that a sentence of confinement would "serve [Graham]" because he would "know that he got punished for what he did. He took responsibility."

Ultimately, the trial court concluded that it would not grant diversion or an alternative sentence in this case. The court said that this was a "tough decision" because Graham was a "good guy" but that the more important issue was the "integrity of the judicial system" and "the integrity of public service." Defense counsel then argued that the mitigating factors, which were that the offense did not involve serious bodily injury, that restitution was made, that Graham had no prior criminal history, that he had an excellent social history and work history, and that he had rehabilitated himself, outweighed the single enhancement factor that Graham abused his position of public trust. The court responded that it gave "[e]xtreme weight" to Graham's abuse of his position of public trust. The court added that Graham could not be treated like everyone else because he was "held to a higher standard [as] a public servant handling public funds for the courts[.]"

At the request of defense counsel, the court stated that it applied the mitigating factors that Graham's conduct neither caused nor threatened serious bodily injury and that Graham had a positive social and employment history. See T.C.A. § 40-35-113(1), (13) (2010). It also stated that the mitigating factor that Graham's conduct was motivated by his desire to provide necessities for his family "[p]robably" applied. See id. § 40-35-113(7). The court also applied the enhancement factors that the amount of property stolen was particularly great and that Graham had abused a position of public trust. See id. § 40-35-114(6), (14) (2010). The court said that the weight it gave to the enhancement factor that Graham abused of a position of public trust was so great that "it outweigh[ed] the mitigating factors."

At the conclusion of the hearing, the trial court denied judicial diversion and all forms of alternative sentencing and imposed a three-year sentence of confinement. Graham subsequently filed a timely notice of appeal.

**ANALYSIS**

The Tennessee Supreme Court remanded Graham's case to this court for reconsideration in light of State v. Bise, 380 S.W.3d 682 (Tenn. 2012), and State v. Caudle, 388 S.W.3d 273 (Tenn. 2012). In our previous opinion, we concluded that the trial court did not abuse its discretion in denying judicial diversion. Kevin Anthony Graham, 2012 WL 3594361, at *8. Because judicial diversion is not a sentencing alternative, Bise and Caudle do not affect our previous decision regarding judicial diversion, and we will not address this issue on remand. See T.C.A. § 40-35-104(c)(1)-(9) (2010) (listing the sentencing alternatives for convicted defendants). Therefore, this opinion will be limited to determining whether the trial court abused its discretion in denying Graham an alternative sentence in light of Bise and Caudle. After careful review, we affirm the trial court's imposition of a sentence of three years in confinement.

We note that the 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." Bise, 380 S.W.3d at 708. The Tennessee Supreme Court, noting this increased discretionary authority, stated that "trial courts, 'familiar with their locale and having seen the evidence and the defendant, as well as possessing the benefit of experience in sentencing matters, should retain that discretion necessary to achieve all of the purposes of the [Sentencing] Act.'" Id. at 709 (quoting State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986)); see Gall v. United States., 552 U.S. 38, 51-52 (2007) ("The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. . . . The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the . . . appeals court.") (internal citations and internal quotation marks omitted). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Bise, 380 S.W.3d at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This abuse of discretion standard of review also applies to a trial court's decision regarding "probation or any other alternative sentence." Caudle, 388 S.W.3d at 278-79. Upon review, we cannot conclude that the trial court abused its discretion in sentencing Graham to three years in confinement.

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b)(1)-(7) (2006). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (2006), Sentencing Comm'n Comments.

In order to achieve the purpose of promoting justice in sentencing, "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense[.]" Id. § 40-35-102(1). Courts must "encourag[e] effective rehabilitation of . . . defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" Id. § 40-35-102(3)(C). In addition, courts must recognize that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]" Id. § 40-35-102(5).

Moreover, the principles of sentencing require a defendant's sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (2010). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5).

Graham argued on direct appeal that the trial court erred in refusing to grant some form of alternative sentencing. Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). Id. § 40-35-102(6)(D). A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Pursuant to the decisions in Bise and Caudle, we must now analyze challenges to a sentence under an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act. Bise, 380 S.W.3d at 707; Caudle, 388 S.W.3d at 278-79. Undeniably, the trial court's imposition of a three-year sentence in confinement constituted a within-range sentencing decision. T.C.A. § 40-35-112(a)(3) (stating that a Range I sentence for a Class C felony is not less than three years nor more than six years). In our previous opinion, we concluded that Graham did not have a long history of criminal conduct and that measures less restrictive than confinement had not frequently or recently been applied unsuccessfully to him. See id. § 40-35-103(1)(A), (C). We also concluded that no evidence regarding the need to deter other individuals in this jurisdiction from committing similar crimes was presented at Graham's sentencing hearing. See id. § 40-35-103(1)(B). Moreover, we held that Graham's offense was not so reprehensible as to preclude all forms of alternative sentencing based on the seriousness of the offense. See id.; State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001) (stating that in order to deny an alternative sentence based solely on the seriousness of the offense pursuant to Code section 40-35-103(1)(B), the circumstances of the offense must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree[.]") (citations

and internal quotation marks omitted); see also State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991); State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981).

Here, the trial court described Graham's case as "a serious matter" involving circumstances that "concern[ed it] greatly." The court emphasized that Graham "had a duty to be the most honest person in the courthouse, and he breached that duty. He breached the public trust." The court acknowledged that determining the sentence in this case was a "tough decision" because Graham was a "good guy" but that the more important issue was the "integrity of the judicial system" and the "the integrity of public service." Most importantly, the court recognized, "[T]he people of Hawkins County have to have the belief that the courthouse and the justice system are places where people that work in those facilities are honest and that they can trust what goes on in these buildings." These statements indicate that the trial court determined that confinement was necessary to avoid depreciating the seriousness of Graham's offense. See T.C.A. § 40-35-103(1)(B). After reconsidering Graham's sentence under the abuse of discretion standard of review adopted in Bise and Caudle and after reviewing the findings made by the trial court in support of its sentencing decision, we cannot conclude that the trial court abused its discretion in sentencing Graham to three years in confinement.

Graham also argued that the trial court erred in refusing to grant him a sentence of full probation. A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a) (2010). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2010). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. Sentencing Comm'n Cmts. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interest of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations and internal quotation marks omitted). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)).

Although Graham was eligible for probation, he failed to carry his burden of establishing his suitability for full probation. Specifically, he failed to prove that a grant of full probation would serve the ends of justice and the best interests of both the public and the defendant. Although Graham argued that his own interests as well as the ends of justice and

the interests of society would be served by a grant of probation, we disagree. Here, the trial court properly determined that an alternative sentence would not serve the ends of justice or the interests of the public. It stated that the public has a vested interest in ensuring that individuals who serve in a public capacity, as Graham did in his deputy clerk position, will conduct themselves honestly during the course of their employment and will be justly punished if they fail to do so. When the trial court considered whether full probation would best serve Graham's interests, it concluded it would not serve his interests because it would not hold him accountable for his actions. Upon review, the record clearly shows that a sentence of full probation would not serve the ends of justice or the best interests of the public. Accordingly, the trial court's denial of full probation was proper.

Finally, Graham argued that the trial court erred in refusing to grant him a community corrections sentence, which would have enabled him "to stay in the community" and to "remain closely connected to his wife and children[.]" The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" T.C.A. § 40-36-103(1) (2010). Eligible offenders under the Community Corrections Act include:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> (2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

Id. § 40-36-106(a)(1)(A)-(F), (2) (2010).  Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right."  State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)).  Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter."  T.C.A. § 40-36-106(d) (2006).  In considering whether to grant a community corrections sentence, the court acknowledged that Graham's offense was not a crime of violence but noted that he committed the offense "over a long period of time" and abused his position of public trust. Although Graham met the minimum requirements of the Community Corrections Act, we conclude that the trial court properly denied a community corrections sentence based on the circumstances of the offense, including Graham's abuse of a position of public trust, the need for deterrence, and the best interests of the public.

## CONCLUSION

Upon reconsideration of this case in light of Bise and Caudle, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE